1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CENTEX HOMES,** ) | **CV F 07-00567 AWI SMS** |
| ) | |
| **Plaintiff**, ) | |
| ) | **ORDER ON DEFENDANT** |
| **v.** ) | **CARR BUSINESS** |
| ) | **ENTERPRISES' MOTION FOR** |
| **FINANCIAL PACIFIC INSURANCE** ) | **SUMMARY JUDGMENT OR** |
| **COMPANY, AMERICAN STATES** ) | **SUMMARY ADJUDICATION** |
| **INSURANCE COMPANY, SAFECO** ) | |
| **INSURANCE COMPANY, CARR** ) | |
| **BUSINESS ENTERPRISES, INC. et al.,** ) | Doc. # 65 |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

        This is an action in diversity by plaintiff Centex Homes ("Centex") against Financial

Pacific Insurance Company, American States Insurance Company and Safeco Insurance

Company (the "insurance company Defendants") and against defendant Carr Business

Enterprises, Inc., a concrete fabrication subcontractor ("Carr").  This action is one of four

filed in this court that arise out of alleged construction defects in a number of residential

development projects in the San Joaquin Valley.  This case and related case number

07cv0568 name the same insurance Defendant but name different subcontractors who are

alleged to have provided defective concrete work resulting in a number of construction defect

lawsuits against Plaintiff.  This action and the related actions seek express indemnification,

damages and declaratory relief.  In the instant action, the named subcontractor-defendant,

Carr, seeks summary adjudication as to liability relating to construction defects on homes that

were substantially completed 10 years or more before the filing of the instant action.

Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.  Venue is proper in this court.

## PROCEDURAL HISTORY

Centex's complaint was filed on April 12, 2007, and alleges a total of six claims for relief.  The first, fourth and fifth claims for relief are alleged against the insurance company Defendant and are not the subject of the instant motion.  Centex's second claim for relief is against Carr for breach of contract, the third claim is against Carr for express indemnity, and the sixth claim for relief is against Carr for declaratory relief.  On May 30, 2007, this case was related to cases numbered 07cv0568, 07cv0569, and 07cv0570.  The instant motion for summary adjudication was filed on July 21, 2009.  Centex's opposition was filed on September 4, 2009, and Carr's reply was filed on September 14, 2009.  The hearing date of September 21, 2009, was vacated and the matter was taken under submission as of that date.

## UNDISPUTED MATERIAL FACTS

The facts of this case are largely undisputed.  Centex is a general partnership organized under the laws of Nevada with a principal place of business in Texas.  Carr is a corporation organized under the laws of California with a principal place of business in California.  Carr entered into a contract or contracts with Centex to provide construction work and services for Pinecastle Estates and Pinecastle Estates Addition subdivisions projects located in the San Joaquin Valley.  Construction defects involving the foundations and concrete work on homes in these subdivisions gave rise to a number of construction defect lawsuits (the "underlying suits").  The complaint alleges defense in the underlying suits was tendered to Carr and the insurance Defendants but neither participated in the defense of the underlying suits or indemnified Centex for costs of settlement of the underlying suits.

Carr alleges that Centex's claims "relate to work Carr allegedly performed at the subdivision projects mentioned in [Centex's] Complaint."  Doc. # 71 at ¶ 4.  Carr disputes the proffered fact in that they contend that Centex's claims are not limited to work and services performed at the subdivisions, but also include claims for failure to provide

2

1   insurance and failure to provide a defense in the underlying construction defect lawsuits.  Id.

2       Carr alleges Centex's complaint claims damages that include costs incurred to defend

3   underlying homeowner lawsuits in specified cases and damages that include costs to "inspect

4   repair and/or settle homes on which Carr allegedly worked," and damages arising from "the

5   alleged failure of Carr to obtain additional insured endorsements allegedly required to be

6   procured by Carr prusuant to the construction agreements for the projects [that are the]

7   subject of [Centex's] Complaint."   Doc. # 71 at ¶¶ 5, 6, 7.  The parties agree the underlying

8   homeowner lawsuits that are the basis for Centex's claims for failure to defend and

9   indemnify were construction defect lawsuits.

10      Carr alleges several facts concerning the underlying construction defect lawsuits that

11  are not disputed.  Essentially the parties do not dispute that close of escrow dates for each

12  home occurred after substantial construction on the home had been completed.  Carr lists a

13  number of homes located in the subject subdivision projects that were the subject of

14  construction defect lawsuits and where the close of escrow dates were more than 10 years

15  prior to the date of filing of this action; that is, where escrow closed prior to July 12, 1977.

16  The list is set forth at paragraph 13 of Carr's proffered listed of undisputed facts and includes

17  in excess of 400 addresses.  Carr alleges and Centex does not dispute that Centex did not

18  cross-complain against Carr in any of the underlying construction defect lawsuits.

19                          **LEGAL STANDARD**

20      Summary judgment is appropriate when it is demonstrated that there exists no

21  genuine issue as to any material fact, and that the moving party is entitled to judgment as a

22  matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

23  Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755

24  F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d

25  1310, 1313 (9th Cir. 1984).

26          Under summary judgment practice, the moving party always bears the initial
            responsibility of informing the district court of the basis for its motion, and
27          identifying those portions of "the pleadings, depositions, answers to
            interrogatories, and admissions on file, together with the affidavits, if any,"
28          which it believes demonstrate the absence of a genuine issue of material fact.

                                    3

1    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary

2    judgment always has the initial responsibility of informing the court of the basis for its

3    motion, the nature of the responsibility varies "depending on whether the legal issues are

4    ones on which the movant or the non-movant would bear the burden of proof at trial."

5    Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not

6    have the ultimate burden of persuasion at trial – usually but not always the defendant – "has

7    both the initial burden of production and the ultimate burden of persuasion on the motion for

8    summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d

9    1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party

10   must either produce evidence negating an essential element of the nonmoving party's claim

11   or defense or show that the nonmoving party does not have enough evidence of an essential

12   element to carry its ultimate burden of persuasion at trial."  Id.

13        If the moving party meets its initial responsibility, the burden then shifts to the

14   opposing party to establish that a genuine issue as to any material fact actually does exist.

15   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l

16   Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los

17   Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this

18   factual dispute, the opposing party may not rely upon the mere allegations or denials of its

19   pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

20   admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

21   Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474

22   F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in

23   contention is material, i.e., a fact that might affect the outcome of the suit under the

24   governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

25   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute

26   is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

27   nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d

28   1433, 1436 (9th Cir. 1987).

1    In the endeavor to establish the existence of a factual dispute, the opposing party need

2    not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4    versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at

5    631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

6    proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

7    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International

8    Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

9    In resolving the summary judgment motion, the court examines the pleadings,

10   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11   any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06

12   (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

13   255, and all reasonable inferences that may be drawn from the facts placed before the court

14   must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United

15   States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of

16   Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the

17   air, and it is the opposing party's obligation to produce a factual predicate from which the

18   inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

19   (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

21   In the instant motion for summary adjudication, Carr seeks what is essentially

22   declaratory judgment on the issue of whether Centex's claims for damages incurred in

23   settlement or defense of the underlying suits pertaining to homes where escrow closed more

24   than ten years before the commencement of this action are time-barred.  Carr's sole

25   contention in support of its motion for partial summary judgment is that Centex's action is

26   barred by the ten-year limitations period provided by section 337.15 of the California Code of

27   Civil Procedure.  Section 337.15 provides as follows in pertinent part:

28   (a) No action may be brought to recover damages from any person, or the

surety of any person, who develops real property or performs . . . construction of an improvement to real property more than 10 years after the substantial completion of the development or improvements for any of the following:

(1) any latent deficiency in the design, specifications, surveying, planning, supervision, or observation of construction or construction of an improvement to or survey of, real property.

(2) Injury to property, real or personal, arising out of any such latent deficiency.

(b) As used in this section, "latent deficiency" means a deficiency which is not apparent by reasonable inspection.

(c) As used in this section, "action" includes an action for indemnity brought against a persona arising out of that person's performance or furnishing services, or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section . . . .

Cal. Code Civ. Pro. § 337.15.

The policy purpose behind section 337.15 is to prevent builders' capital resources from being tied up to cover "long tailed" liability for construction defects that occur long after the completion of construction.  See Martinez v. Traubner, 32 Cal.3d 755, 760 (1982) ("the purpose of section 337.15 has been stated as 'to protect developers of real estate against liability extending indefinitely into the future'").  The limitations period for patent construction defects – that is, defects that are discernable by reasonable inspection is three or four years, depending on whether the claim is contract based or tort based.  The ten-year limitation for latent construction defects forms the maximum limitations period for recovery for any construction defect.  See Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003) (actions for a latent construction defect must be filed within three or four years of discovery of the defect but in any event must be filed within ten years of substantial completion regardless of when the defect was discovered).

There is no question that the claims arising from construction defects in the homes listed in Carr's motion for summary judgment represent claims for construction defects that are time barred by the terms of section 337.15 *if* Centex's claims fall within the scope of construction defect claims that are subject to the 10-year limitation period of section 337.15.

6

Centex contends that summary adjudication is not authorized in this case because Centex's claims against Carr include, in addition to barred claims, claims for three categories of damages that are not barred by section 337.15.  Specifically, Centex contends that:

1.  Centex's claim for indemnity for settlement of claims for personal injury are not time-barred;

2.  Centex's claim for Carr's "breach of a separate promise in the parties' contract for [Carr] to insure Centex under [Carr's] insurance policies is not barred, and;

3.  Centex's claim for Carr's "breach of separate promise in the parties' contracts for [Carr] to defend Centex against the underlying homeowner lawsuits, regardless of whether those lawsuits have merit" is not time-barred.

4.  Rodriguez, in order to invoke the time limits set for the by § 337.15, must prove the requirements of that section; in particular, Rodriguez must prove the construction defects involved were "latent" defects.  Centex alleges Rodriguez has failed to produce proof that he construction defects were "latent."

Doc. # 70 at 6:5-9. The court will consider each of Centex's contentions in order.

**I. Personal Injury Claims**

There is no question that personal injury or wrongful death actions arising from construction defects are not barred by the 10-year limitations period of section 337.15. Martinez, 32 Cal.3d at 760-761.  What is in dispute is whether Centex's complaint alleges indemnity for claims of personal injury arising from Carr's alleged construction defects.  An inspection of the complaint reveals no mention at all of facts that might suggest that Centex incurred costs for the settlement of claims for homeowner personal injury in the underlying homeowner suits.  Centex, in its opposition to Carr's motion points out that the complaints in the underlying homeowner lawsuits alleged, *inter alia* physical injury.  See Doc. # 72 at ¶ 1. Centex further alleges that when it settled the homeowner claims, the settlement amounts included a component of compensation to secure waivers of liability for current or future personal injury claims.  Doc. # 72 at ¶ 2. Centex alleges that the "settlements with homeowners did not segregate amounts or percentages of the settlements that were based on

7

the resolution of personal injury claims." Doc. # 72 at ¶ 3.

Centex's contentions with regard to personal injury claims have two problems.  First, Centex's allegation that it is entitled to indemnity for losses it incurred to settle homeowner claims for personal injury constitutes a theory of recovery not pled in the complaint, but pled for the first time in Centex's opposition to Carr's motion.  While a party may recover on a theory not expressly pleaded in the complaint but proven at trial, the opposing party must have fair notice.  Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707, 714 (8th Cir. 1979).  However, "'[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.' [Citation.]" Speer v. Rand McNally & Co., 123 F.3d 658, 665 (7th Cir. 1997); Oakland Raiders v. Nat'l Football League, 131 Cal.App.4th 621, 648 (6th Dist. 2005).  The court concludes that Centex's assertion of a claim for indemnification for personal injury for the first time in its opposition to Carr's motion for summary judgment fails to accord adequate notice to Carr and may not be considered by the court.

The court need not consider whether Centex should be allowed to amend the complaint because no motion to amend is before the court.  However, should Centex seek to amend, the second problem with Centex's claim arises.  Centex has made no allegations of fact from which it can be shown or inferred that Centex paid to settle personal injury claims in the underlying homeowners' suits.  Centex's own allegations, combined with the documents submitted in support of Centex's opposition to Carr's motion show, at most, that Centex paid homeowners in order to receive a general global release from liability arising from construction defects that included release from potential liability for personal injury or emotional distress.  Notwithstanding the allegations of personal injury in the complaints in the underlying homeowner complaints, there is absolutely no evidence alleged or presented to indicate that Centex paid any claims for actual, as opposed to potential, physical injury.

Centex's allegation that the settlement costs for personal injury claims in the underlying homeowner suits were "indivisible" from the settlement amount paid for global, comprehensive release from construction defect liability raises serious doubts as to whether

Centex can advance a theory of recovery that can produce a claim for damages that is sufficiently definite.  Carr's motion challenges the sufficiency of Centex's proof of the amount paid for actual physical injury.  As Carr points out, Centex responds to the challenge by merely asserting that the claim for indemnification for personal injury claims gives rise to an "ambiguity" that requires a determination by the finder of fact.  The court finds no ambiguity.  Absent a proffer of evidence that actual claims for physical injury were paid and that a means exists by which claims for actual physical injury could be calculated, Centex's claim for damages for those Carr's alleged failure to indemnify is purely conjectural.  To survive summary judgment the plaintiff must provide some basis for determination of a claim for damages.  See Hutcherson v. Alexander, 264 Cal.App.2d 126, 135, (1968) ("It is well-established under California law that while the fact of damages must be clearly shown, the amount need not be proved with the same degree of certainty, so long as the court makes a reasonable approximation").  Although the issue is not presently before the court, Centex is notified that the court will not be inclined to permit amendment of Centex's complaint unless Centex can show that the amounts that Centex paid to settle claims for actual physical damages can be calculated to a reasonable degree of approximation.

**II.  Failure to Procure Additional Insured Endorsements**

Subsection (c) of section 337.15 defines a "action" for purposes of this section as including "an action for indemnity brought against a person *arising out of* that person's performance or furnishing services, or materials referred to in this section . . . ."  Section 337.15(c) (italics added).  Centex's basic contention in opposition to the motion for summary judgment with respect to Carr's alleged failure to obtain additional insured endorsements is that the duty to obtain the insurance endorsements is a contractual breach that is not within the scope of actions subject to the 10-year limitations period of section 337.15.

Based on this subsection, there is no question that section 337.15 applies to Centex's claims for direct indemnity against Carr.  The question presented by Carr's motion and Centex's opposition is whether Carr's alleged failure to obtain additional insured

9

endorsements gives rise to damage claims that are severable from Centex's claims for

indemnity.  The court concludes the claims are not severable.

Centex's complaint alleges:

Among other obligations, the Subcontracts required Carr to obtain [commercial general liability (CGL)] insurance having specified terms and limits, and to add Centex as an additional insured under each such policy. The terms specified in the Subcontracts for the CGL policies to be obtained by Carr include, among others, products/completed operations coverage and *contractual liability endorsements covering Carr's indemnity and defense obligations to Centex*.  The Subcontracts specified that the CGL policies were, in no event, to contain any exclusion that conflicts with any coverage required by the Subcontracts.  The Subcontracts also specified that the CGL coverage to be provided by Carr would be primary to any coverage provided by other insurance carried by Centex.

Doc. # 2 at ¶36. (Italics added)

Based on Centex's complaint, the only discernable benefit accruing to Centex from

the additional insurance endorsements is that they are a surety for the funding of Carr's

indemnity obligations to Centex.  The measure of damages Centex could recover for a claim

of contractual breach of duty to obtain the additional insured endorsements is precisely the

same as the measure of Centex's direct indemnity claims.  The court finds that Centex's

claims with respect to the alleged failure of Carr to obtain the additional insured

endorsements is simply an effort by Centex to cloak its direct indemnity claims in other

clothes hoping to avoid the time limitation of section 337.15.  The court concludes that

Centex's claims alleging Carr's failure to obtain additional insured endorsements is time-

barred by the provisions of section 337.15 to the same extend Centex's claims of entitlement

to express indemnity would be.

There are two asides worth noting.  First, the court notes that should Centex

ultimately prevail, either by way of appeal or motion for reconsideration, on its contentions

with respect to its action against Carr for failure to obtain additional insured endorsements,

Centex's claims may nonetheless be time-barred by the applicable statute of limitations for

breach of contract.  The court's decision here is limited to the issue of whether the time

limits in section 337.15 apply; the court makes no determination as to any other basis for the

exclusion of Centex's claims of breach of contract.

10

1
2
3
4
5
6
7
8
9
10

Second, Centex's complaint appears factually inconsistent with respect to its allegations regarding the claim for failure to obtain additional insured endorsements.  The court notes that at ¶ 17 of Centex's complaint Centex alleges that "Carr provided Centex with certificates of insurance and endorsements identifying the policies issued by Insurers under which Centex is an additional insured . . . ."  However, at ¶ 40, Centex alleges that Carr failed "to proved CGL coverage as promised . . . ."  Although the issue is not before the court at this time, the court notes that Centex's allegations appear inconsistent or at least appear to not provide sufficient notice as to what additional insured endorsements were promised and not provided.  Again, the court's opinion here is limited to the issue presented and the court makes no determination as to the adequacy of Centex's pleadings generally.

11

**III.  Duty to Defend**

12
13
14
15
16
17
18
19
20
21
22

Centex relies on Crawford v. Weather Shield Mfg., Inc., 44 Cal.4th 541 (2008) ("Crawford") for the proposition that the duty to defend, when contractually established, is distinct from the duty to indemnify.  In Crawford, the issue the court dealt with was whether the duty to defend in the non-insurance context arises separately from the duty to indemnify as is the case in the insurance context.  See id. at 547 ("we address issues concerning the contractual duty to defend in a *noninsurance* context") (italics in original).  The Crawford court concluded that, as in the insurance context, an indemnitor has the obligation, upon tender of defense, to defend "against all claims 'embraced by the indemnity,'" Id. at 557.  Thus, Crawford stands for the proposition that an indemnitor's duty to defend "arises immediately upon a proper tender of defense by the indemnitee, and thus before the litigation to de defended has determined whether indemnity is actually owed." Id. at 558.

23
24
25
26
27

As Carr notes, Crawford does not directly confront the issue of whether the time limit imposed by section 337.15 applies to claims for damages arising from failure to defend an underlying construction defect lawsuit. Neither party has offered any authority that directly supports or contravenes the proposition, nor has the court been able to find any such authority.  Nonetheless, Crawford does offer some helpful insight.

28

As to the damages that may accrue from a failure to defend, the Crawford court

11

observed:

> The indemnitor's failure to assume the duty to defend the indemnitee upon request ([Cal. Civ. Code] § 2778, subd. 4) may give rise to damages in the form of reimbursement of defense costs the indemnitee was thereby forced to incur.  But this duty is nonetheless distinct and separate from the contractual obligation to pay an indemnitee's defense costs, after the fact, as part of indemnity owed under the agreement.

Id. at 557 - 558.  Thus, Crawford observes that there may exist some damages arising out of the failure to defend that are not compensable as indemnity and that are incurred independently of any judgment on the merits of the underlying construction defect lawsuit.

As previously stated, section 337.15 defines an "action" for purposes of application of the statute of limitations as including "an action for *indemnity* brought against a person *arising out of that person's performance or furnishing of services or materials referred to in this section*, . . . ."  Unlike Centex's claims for damages arising out of the failure to provide additional insured endorsements, the claim for damages for failure to provide a defense is not an action for indemnification by another name.  As Crawford suggests, the measurement for damages arising from a refusal to undertake a properly tendered defense is different from the measurement of damages that are compensable as indemnity following a judgment.  In the present factual context, the foregoing passage from Crawford creates an ambiguity in that there is no suggestion what the exact nature of the damages arising from a failure to defend are envisioned to be.  Nonetheless, the potential existence of a class of damages that may not be within the scope of indemnity costs, combined with Centex's claim for damages arising from those costs, is sufficient to create an issue of material fact that will require resolution either by the finder of fact or by subsequent motion for summary judgment.

The court also notes that claims for damages arising from failure to defend are different from claims arising from construction defects both with respect to the categories of losses that comprise the damage claims and with respect to the rules of procedure that pertain to each.  While an indemnity claim accrues upon judgment of the underlying claim; a failure to defend claim accrues with the proper tender of defense and continues for the duration of proceedings in the underlying suit or until the insuror or indemnitor proves the

12

impossibility of recovery on the underlying claim.  <u>GGIS Ins. Serv. v. Superior Court</u>, 168
Cal.App.4th 1493, 1505 (2nd Dist. 2009).  Tolling, which does not apply to claims for
damages arising from construction defects, <u>Lantzy</u>, 31 Cal.4th at 383; does apply to claims
for damages arising out of failure to defend from the time the defense is properly tendered
until the action in the underlying case is concluded.  <u>Archdale v. American Int'l Specialty
Lines Ins. Co.</u>, 154 Cal.App.4th 449, 478 (2nd Dist. 2007).

  The damages that arise from a failure to defend arise from facts separate and apart
from damages arising from construction defects, are measured by costs unrelated to
construction defects, and are litigated according to rules that are separate from those that
apply to construction defects.  The court therefore concludes that an action for damages
arising from the failure to defend falls outside the scope of indemnity-related damages that
are subject to the 10-year limitations period of section 337.15.  Again, this determination
neither suggests nor implies any judgment with regard to the ultimate viability of Centex's
claim for such damages.  Other bases may exist for summary judgment with respect to
Centex's claims arising from failure to defend and other time limits may apply.  The court
here concludes only that Centex's claims for damages arising out of Carr's failure to defend
in the underlying suits is not subject to the limitations period set forth in section 337.15.

   **D.  *Failure to Prove Construction Defects Were "Latent"***

  Centex's allegations with regard to Rodriguez's burden to show the construction
defects were "latent" is somewhat puzzling.  Centex contends that Rodriguez has a
"threshold" burden to show that the defects giving rise to Centex's claims for damages were
"latent" defects.  The court disagrees.  Rodriguez's instant motion for summary adjudication
challenges on the grounds that: (1) the damages Centex claims (at least as to Rodriguez)
arise from construction defects, and (2) that the maximum limitations period for recovery of
damages arising from construction defects has passed.  Thus, the threshold showing is that at
least some portion of the damages claimed by Centex arise from construction defects.  If, as
the court has concluded, some portion of the damages claimed in the complaint arise from
construction defects, then those defects must fall into one of two categories; either the

13

1  defects are latent or patent.  The limitations period for the former is the 10-year period

2  imposed by section 337.15, and the limitations period for the latter is the 4-year period

3  imposed by section 337.1.  For claims arising from construction defects, one or the other

4  limitations period must apply; there are no others.  As the court has explained, for claims

5  that arise from other than construction defects, such as claims for damages for failure to

6  defend, other time limitations apply.

7          As the court previously noted, the ten-year limitation for latent construction defects

8  forms the maximum limitations period for recovery for any construction defect.  <u>Lantzy</u>, 31

9  Cal.4th at 370.  Thus, the ten-year limitations is the default maximum limitations period for

10  any claim that falls in the category of construction defect.  Had Carr intended to apply the

11  lesser limitations period imposed by section 337.1, he would have been required to show

12  that the defects in question were patent.  However, in basing the motion for summary

13  adjudication on the default maximum limitations period for construction defects, Carr need

14  only show that the time limits applicable to construction defects apply.

15  **IV.  Failure to Prove Construction Defects Were "Latent"**

16          Centex's allegations with regard to Carr's burden to show the construction defects

17  were "latent" is somewhat puzzling.  Centex contends that Carr has a "threshold" burden to

18  show that the defects giving rise to Centex's claims for damages were "latent" defects.  The

19  court disagrees.  Carr's instant motion for summary adjudication challenges Centex's

20  complaint on the grounds that: (1) the damages Centex claims (at least as to Carr) arise from

21  construction defects, and (2) that the maximum limitations period for recovery of damages

22  arising from construction defects has passed.  Thus, the threshold showing is that at least

23  some portion of the damages claimed by Centex arise from construction defects.  If, as the

24  court has concluded, some portion of the damages claimed in the complaint arise from

25  construction defects, then those defects must fall into one of two categories; either the

26  defects are latent or patent.  The limitations period for the former is the 10-year period

27  imposed by section 337.15, and the limitations period for the latter is the 4-year period

28  imposed by section 337.1.  For claims arising from construction defects, one or the other

14

1    limitations period must apply; there are no others.  As the court has explained, for claims

2    that arise from other than construction defects, such as claims for damages for failure to

3    defend, other time limitations apply.

4         As the court previously noted, the ten-year limitation for latent construction defects

5    forms the maximum limitations period for recovery for any construction defect.  Lantzy, 31

6    Cal.4th at 370.  Thus, the ten-year limitations is the default maximum limitations period for

7    any claim that falls in the category of construction defect.  Had Carr intended to apply the

8    lesser limitations period imposed by section 337.1, he would have been required to show

9    that the defects in question were patent.  However, in basing the motion for summary

10   adjudication on the default maximum limitations period for construction defects, Carr need

11   only show that the time limits applicable to construction defects apply.

12                              **CONCLUSION AND ORDER**

13        As noted at the outset, the resolution requested in the instant motion for summary

14   adjudication is in the nature of a declaratory judgment.   It is the court's understanding that

15   Carr does not seek outright dismissal of Centex's claims but rather seeks to defines to some

16   extent the applicability of the limitations imposed by section 337.15 on the scope of

17   recovery that can be had by Centex in its claims against Carr.  With this in mind, the court

18   hereby declares as follows:

19   1.   To the extent Centex asserts claims against Carr for indemnity for costs arising from

20        construction defects for houses where escrow closed prior to July 12, 1977, those

21        claims are barred by the 10-year limitations period imposed by section 337.15.

22   2.   To the extent Centex asserts claims against Carr for contractual breach for failure to

23        obtain additional ensured endorsements, those claims are barred by the 10-year

24        limitations period imposed by section 337.15.

25   3.   To the extent Centex seeks recovery against Carr for indemnity for costs arising from

26        physical injury resulting from construction defects, such recovery is not allowed

27        because no claim for such recovery was properly pled.

28   4.   To the extent Centex seeks damages for costs arising from Carr's failure to defend

properly tendered defenses in the underlying homeowner suits, such damages are not prevented by the 10-year limitations period imposed by section 337.15.

5.   No other limitation on Centex's claims or on Carr's defenses are expressed or implied by this order.

6.   Centex's motion for judicial notice, Docket # 76, is hereby GRANTED as unopposed.


IT IS SO ORDERED.

**Dated:      December 14, 2009                                  /s/ Anthony W. Ishii**
                                                       CHIEF UNITED STATES DISTRICT JUDGE

16